## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

PETER A. IRVING and TAMARA J.        :
IRVING, both individually and        :
as personal representatives of       :
the Estate of Curtis R. Irving,      :
                                     :
     Plaintiffs,                     :
                                     :
          v.                         :    Case No. 2:10-cv-153
                                     :
REVERA, INC., et al.,                :
                                     :
     Defendants.                     :

### MEMORANDUM and ORDER

Defendants Revera, Inc., 3218044 Nova Scotia ULC, and Revera Holdings, Inc. (collectively, the "Moving Defendants") filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Mot. to Dismiss, ECF No. 50.  For the reasons that follow, the Moving Defendants' motion is **denied in part**, as to Revera, Inc., **and granted in part** without prejudice, as to 3218044 Nova Scotia ULC and Revera Holdings, Inc.

### Background

Plaintiffs Peter A. Irving and Tamara J. Irving (the "Irvings") are the surviving parents of Curtis R. Irving.  On June 26, 2008, Curtis, who suffered from cerebral palsy and bowel obstruction, was admitted to the Burlington Health and Rehabilitation Center, LLC ("Burlington Health") in Burlington, Vermont for advanced nursing care.  Curtis died on July 5, 2008, after a Burlington Health nurse found him in severe respiratory

distress.  On June 25, 2010, the Irvings filed a seven-count complaint against Burlington Health for its alleged role in their son's death.  Compl., ECF No. 1.  According to the Irvings' complaint, prior to Curtis's admission, the State of Vermont had investigated and cited Burlington Health for providing deficient care.  The Irvings subsequently amended the complaint to include a total of eleven counts and also added several new defendants, all entities with ownership or managerial control over Burlington Health.  First Am. Compl., June 20, 2011, ECF No. 36.  The new defendant entities are Revera, Inc., 3218044 Nova Scotia ULC, Revera Health Systems, Inc., and Revera Holdings, Inc.[1]

At present, defendants have not produced an organizational chart documenting each of the defendants' interests in and control over Burlington Health, but the parties appear to agree on the basics.  At the pyramid's apex is Revera, Inc. ("Revera"), a Canadian corporation based in Ontario.  It owns, either directly or indirectly, 212 long-term care and skilled nursing centers in Canada and forty such facilities in the United States – seven in Vermont.  Revera in turn, both directly and through a subsidiary, owns all shares of 3218044 Nova Scotia ULC ("Nova Scotia"), a Canadian company.  Nova Scotia fully owns two Delaware corporations, Revera Health Systems, Inc. ("Revera

---

[1]     The Irvings also named "XYZ Entities 1-10" as placeholders for other individual and corporate defendants as yet undiscovered that are liable for Curtis's death.

2

Health Systems"), with its offices in Connecticut, and Revera Holdings, Inc. ("Revera Holdings"), with its place of business in Delaware.  Revera Health Systems supports all of the United States facilities owned by Revera.  It and Revera Holdings, by way of additional holding companies not named in the Irvings' suit, jointly own Burlington Health, which itself is a Delaware LLC based in Vermont. In their motion to dismiss, the Moving Defendants do not contest personal jurisdiction over Burlington Health or Revera Health Systems.  Rather, they challenge the Court's personal jurisdiction over Revera, Nova Scotia, and Revera Holdings.

According to an affidavit submitted by the Irvings' attorney, Thomas Sherrer (the "Sherrer Affidavit"), Revera derives revenue from its United States facilities by collecting management fees.  Resp. in Opp'n to Mot. to Dismiss Att. 1, ECF No. 52-1.  Burlington Health has paid hundreds of thousands of dollars in fees to Revera Health Systems, which in turn transfers the funds to Revera.  Revera exercises control over the profit margins of Burlington Health and like facilities by approving their final operating budgets and expenditures for capital improvements.  It routinely audits Burlington Health and its other United States facilities.  It runs Burlington Health's computer server and email, and the Vermont facilities have nearly identical websites that prominently feature the Revera brand name

3

and contain links to Revera's own website.  Response in Opp'n to
Mot. to Dismiss Ex. A, at 12-18, ECF No. 52-2.  The URL for
Burlington Health's website is "http://www.reveraburlington.com."
*Id.* at 12-13.  The website also claims that "Burlington Care
Center is part of the Revera Health Systems."  *Id.* at 13.
According to the amended complaint, all seven of Revera's Vermont
facilities are organized as LLCs, with Revera officers serving as
members.  As to Revera Holdings and Nova Scotia, both sides agree
that neither company has employees or an apparent business
purpose beyond acting as holding companies for Revera's United
States facilities.

The question presented by the Moving Defendants' motion is
whether the above-described contacts are sufficient to create
personal jurisdiction over them in this Court.

## Discussion

### A. Legal Standard

It is the plaintiff's burden to show personal jurisdiction
over a defendant.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560, 566 (2d Cir. 1996).  To survive a Rule 12(b)(2)
motion to dismiss when there has been limited discovery and no
evidentiary hearing, plaintiffs may discharge their burden with a
jurisdictional showing resting solely on their own pleadings,
affidavits, and other supporting materials.  *Tom & Sally's
Homemade Chocolates, Inc. v. Gasworks, Inc.*, 977 F.Supp. 297, 300

(D. Vt. 1997).  In this case, there has been no evidentiary hearing and the Irvings have conducted minimal discovery, much of it before amending their complaint to include the defendants now at issue.  Thus, the Irvings may demonstrate personal jurisdiction using only the allegations contained in their complaint, the Sherrer Affidavit, and the supporting materials marshaled response to the motion to dismiss.

A federal court sitting in diversity may exercise personal jurisdiction over a foreign corporation if the plaintiff makes a two-part showing: (1) "that the defendant is amenable to service of process under the forum state's laws"; and (2) "the court's assertion of jurisdiction under these laws comports with the requirements of due process."  *Metro. Life,* 84 F.3d at 567. Since Vermont's long arm statute, 12 Vt. Stat. Ann. tit. 12, § 913(b) (2011), confers personal jurisdiction over foreign state defendants to the full extent permitted by the Due Process Clause, *Dall v. Kaylor*, 658 A.2d 78, 79 (Vt. 1995), the Court proceeds to the second prong, the Due Process Clause analysis. *Metro. Life*, 84 F.3d at 567.

In deciding whether the Due Process Clause permits jurisdiction, the Court engages in a two-part inquiry.  It first evaluates whether the plaintiff has adequately alleged that the defendant has "minimum contacts" with the forum state.  *Metro. Life*, 84 F.3d at 567.  In determining minimum contacts, different

standards apply when the plaintiff is alleging general as opposed
to specific personal jurisdiction. *Id.* at 567. General
jurisdiction arises when the foreign defendant's minimum contacts
are so "'continuous and systematic' as to render [the defendant]
essentially at home in the forum State." *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing
*Int'l Shoe*, 326 U.S. at 317). If general jurisdiction attaches,
courts may entertain any claim brought against the defendant.
*Goodyear*, 131 S. Ct. at 2851. By contrast, "specific
jurisdiction is confined to adjudication of 'issues deriving
from, or connected with, the very controversy that establishes
jurisdiction.'" *Id.* (quoting Arthur T. von Mehren & Donald T.
Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79
Harv. L. Rev. 1121, 1136 (1966)).

Once a plaintiff demonstrates the defendant has the
requisite contacts with the forum, the Court turns to the second
step in the due process analysis. Under the second prong, the
plaintiff must show that extending jurisdiction over the
defendant would be reasonable in the circumstances of the case,
fitting with "'traditional notions of fair play and substantial
justice.'" *Metro. Life*, 84 F.3d at 568 (quoting *Int'l Shoe*, 326
U.S. at 316). The same test applies regardless of whether the
plaintiff invokes specific or general jurisdiction. *Id.* at 573.
It requires courts to balance five factors: (1) the burden to the

defendant; (2) the forum state interest in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving cases; and (5) the interest of all states in advancing their shared social policies.  *Burger King*, 471 U.S. at 476-77 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

## B.  Revera

Examining whether it has personal jurisdiction over Revera, the Court starts by reviewing Revera's contacts with the forum state.  Revera is a Canadian company, and its ownership of its Vermont businesses flows first through several other companies. As a general matter, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts."  *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (Kennedy, J. plurality opinion).  However, lack of physical contact with the forum state is not dispositive against jurisdiction, "[s]o long as a commercial actor's efforts are purposefully directed toward residents of another State." *Burger King*, 471 U.S. at 476 (internal quotation omitted). Revera has continuously and systematically conducted business aimed at Vermont's market.  It owns seven health care facilities in Vermont, from which it has earned substantial revenue – several hundreds of thousands of dollars in fees from Burlington

Health alone.  According to the Irvings' allegations, it manages the operations of these centers, with ultimate authority over their budgets and capital improvements.  It also publicly projects its behind-the-scenes authority: each Vermont center has a coordinated website that clearly displays the Revera brand name and links to Revera webpages.  Those amount to significant and ongoing efforts aimed at doing business in Vermont.

The Court's decision in *Allen-Sleeper v. Federal Express Corp.*, No. 5:09-cv-151, 2010 WL 3323660 (D. Vt. Apr. 14, 2010) does not require a different result.  The contacts between the parent company in that case, FedEx Corp., and Vermont were more attenuated.  FedEx Corp. provided "strategic direction to and coordination" of its Vermont subsidiaries, but otherwise its only contact with the state was one contract for legal services.  *Id.* at *3.  Unlike FedEx Corp., Revera derives significant revenue from Vermont and advertises and solicits business in Vermont. *See id.*  Its control, as alleged, is more substantial than directing or coordinating from afar, as it extends to managing all expenses of the facilities and realizing revenues from their operations.  It includes presenting a united face to the public through the facilities' websites.  Finally, Revera officers are members of each Vermont center's LLC.

Nor are Revera's contacts with the state fatally weakened for general jurisdiction purposes because its ownership is

indirectly channeled through holding companies.  In *Pasquale v. Genovese*, the Vermont Supreme Court found personal jurisdiction over a German auto manufacturer parent company of a subsidiary authorized to do business in Vermont.  392 A.2d 395, 398 (Vt. 1978).  It found sufficient the parent's "active, planned participation in the Vermont market, through a chain of manufacture and distribution set up for the purpose, and through eventual sale of the vehicle in question in Vermont."  *Id.*  The same reasoning applies to Revera, even though the chain of ownership of Burlington Health is marked by further intermediate layers of holding entities than in *Pasquale*.  As outlined above, Revera is deeply involved in the business of Burlington Health and its sister Vermont facilities.  Its websites evidence a sophisticated and coordinated campaign to win business in Vermont by trading on the common Revera brand name.  Revera has "enjoyed the benefits of conducting business in Vermont," and it "should bear the corresponding burden of submitting to Vermont's courts." *Allen-Sleeper*, 2010 WL 3323660 at *3 (citing *Int'l Shoe*, 326 U.S. at 317-19).  Revera has sufficient connections with Vermont to pass the first prong of the due process test for general jurisdiction.

Moving to the second due process prong, it is reasonable and in keeping with "traditional notions of fair play and substantial justice," *Metro. Life*, 84 F.3d at 568 (citation and internal

quotation omitted), to hale Revera into court in Vermont.  The
first factor in the five-factor analysis is the burden imposed on
the defendant.  While there are always costs to defending a
lawsuit, particularly in a foreign state, that burden is far less
today than it once was due to advances in communications and
transportation.  *Metro. Life*, 84 F.3d at 575.  Moreover, Revera
is a large corporation with subsidiaries in Vermont.  Even if all
the Moving Defendants were dismissed from this case, Revera's
subsidiaries, Burlington Health and Revera Health Systems, would
remain parties to the action.  Given the relatively minimal
burden imposed, this factor tilts in favor of granting personal
jurisdiction over Revera.

As to the second reasonableness factor, the interest of the
forum state, Vermont has a legitimate concern with resolving
claims springing from the death of one its residents that
occurred at a health care facility in the state. *See id.* at *6.
In fact, the State of Vermont has investigated and cited
Burlington Health for substandard care in the past.  The
interests of the forum state thus also favor exercising
jurisdiction.

The third factor is the plaintiffs' interest in convenient
and effective relief.  The Irvings' theory of the case is that
decisions both of Burlington Health and its corporate owners led
to their injuries.  They thus have an interest in pursuing their

eleven-count complaint against all defendants they believe responsible for their harm, even if it would not impact the size of a potential judgment.  Additionally, the Irvings are residents of Vermont and maintaining an action in Vermont is a more convenient route to relief than filing suit in another U.S. state or Revera's home country, Canada.  The Irvings further contend that Burlington Health's insurance policy is insufficient to cover the costs of a judgment against the facility, requiring other defendants to ensure effective relief.  The Court need not evaluate this question, as the Irvings' other interests are sufficient to point in favor of exercising personal jurisdiction.

The fourth factor to consider is the interstate judicial system's interest in efficient resolution of the case.  Its principal concern is the location of evidence and witnesses vis-a-vis the trial venue.  *Metro. Life*, 84 F.3d at 574.  While it is difficult to gauge the results of discovery in advance, it is probable that significant evidence will be in Vermont, since Curtis's death took place in the state and Burlington Health is located in Vermont.  However, additional evidence as to the roles of the other defendants, none of which is based in Vermont, may require discovery outside the forum state.  Thus, this factor does not point decisively in favor of the reasonableness or unreasonableness of exercising personal jurisdiction.

Finally, the Court must look to the "the common interests of the several states in promoting substantive social policies," in deciding whether jurisdiction would be reasonable. *Id.* at 575. As interstate concerns, the Irvings briefly mention the growing popularity of for-profit nursing homes nationwide, and the increase in foreign ownership of nursing homes in Vermont.  The Moving Defendants, for their part, put forward that many of the claims raised by the Irvings are unrecognized under Vermont law, and adjudicating them therefore serves the interests of no state. The Moving Defendants' argument is more properly an issue for a motion on the merits of the Irvings' claims, which the Moving Defendants have not yet lodged.  Be that as it may, since neither party has made a detailed showing on this factor, it does not weigh strongly for or against jurisdiction.

Taking stock of all the factors - with the first, second and third all leaning in favor of personal jurisdiction over Revera and the fourth and fifth not clearly tilting in either direction - the Court finds exercising jurisdiction reasonable in this case. Since Revera has adequate contacts with Vermont and exercising general personal jurisdiction over it would be reasonable, the Moving Defendants' motion is denied as to Revera.

## C.  **Nova Scotia and Revera Holdings**

The Court next takes up the two remaining Moving Defendants, Nova Scotia and Revera Holdings, which like Revera are organized

and based outside of Vermont.  The Court is sensitive that the Irvings have not yet had an opportunity to engage in discovery concerning the precise roles of these two companies.  At the same time, presently the Irvings make few allegations as to these entities' general relationship to Vermont or specific connection to the events in Vermont leading to their son's death.

Their responsive filings to the motion to dismiss, their amended complaint, and the Sherrer affidavit focus almost exclusively on Burlington Health, Revera Health Systems, and Revera, not on Nova Scotia or Revera Holdings.  The only links the Irvings allege as to the latter two defendants are that they indirectly own Burlington Health and provide tax benefits and reduced legal liability for Revera's United States operations. But as the Vermont Supreme Court has made clear, ownership of an entity doing business in Vermont is not sufficient to establish personal jurisdiction in Vermont courts.  *Pasquale*, 392 A.2d at 398.[2]  Similarly, simply being Revera subsidiaries is alone not a strong enough tie to Vermont for jurisdictional purposes.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("nor

---

[2]   The Moving Defendants' Memorandum in Support of their Motion to Dismiss also defends against an argument for personal jurisdiction by piercing the corporate veil, Mem. in Supp. of Mot. to Dismiss 8-9, a concept that arises from substantive corporate law, Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency*, 74 Cal. L. Rev. 1, 14-15 (1986). However, since the Irvings' responsive papers did not make such a claim, the Court does not consider it here.

does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary.") Passively providing tax and liability benefits is a weak link. The Irvings have not alleged these defendants "purposefully direct[] [their] . . . activities towards residents of the forum State." *N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990). The Sherrer Affidavit admits that while further discovery may clarify the companies' authority, "[n]either Revera Holdings, Inc. nor 3218044 Nova Scotia ULC has any employees, physical location or apparent business purpose." Resp. in Opp'n to Mot. to Dismiss Att. 1, at 5, ECF No. 52-1.

The Irvings' submissions provide no basis to believe Nova Scotia and Revera Holdings have contacts with Vermont "so continuous and systematic as to render them essentially at home" in this state. *Goodyear*, 131 S. Ct. at 2851 (citation omitted). As such, their links are insufficient to establish the Court's general personal jurisdiction. Nor have the Irvings alleged any actions taken either by Nova Scotia or Revera Holdings that both establish minimum contacts with Vermont and from which the claims at issue in this case spring. Thus, the Court also lacks specific jurisdiction. Since the Irvings have not made the requisite showing of minimum contacts, the Court need not address whether exercising personal jurisdiction over these two defendants would be reasonable under the circumstances. The Moving Defendants'

14

motion to dismiss is granted with respect with Nova Scotia and
Revera Holdings.  Mindful we remain in the early stages of the
proceedings, however, the Court grants the motion without
prejudice to the Irvings to later move to amend their complaint.

### Conclusion

For the reasons stated above, the Moving Defendants' motion
to dismiss for lack of personal jurisdiction is denied in part, as
to Revera, Inc., and granted in part without prejudice, as to
3218044 Nova Scotia ULC and Revera Holdings, Inc.


Dated at Burlington, in the District of Vermont, this 4th day
of November, 2011.

                              /s/ William K. Sessions III
                              William K. Sessions III
                              U.S. District Court Judge